**UNITED STATES DISTRICT COURT**                    **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| THEODORE W. TAYLOR, #26966-078 | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 4:21-CV-103 |
| | § | CRIMINAL ACTION NO. 4:17-CR-9(1) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM AND ORDER

Pending before the court is Theodore "Tad" William Taylor's ("Taylor") *pro se* motion to vacate, set aside, or correct sentence in his underlying criminal conviction, filed pursuant to 28 U.S.C. § 2255 (#1).[1]  The Government filed "Government's Response in Opposition to Taylor's § 2255 Motion" (#11).  Taylor then filed Replies to the Government's Response (#s 12, 13) as well as numerous letters to the court (#s 16-18, 21-22, 26-27).  Besides reurging the issues already raised, Taylor argues that a recent decision of the United States Supreme Court should be applied to his case—*Ruan v. United States*, 597 U.S. 450 (2022).  The Government filed "Government Response to Taylor's Claim for Relief Under *Ruan v. United States*, 142 S. Ct. 2370 (2022)" (#29).  Having considered the § 2255 motion, the Government's Responses, Taylor's Replies, and the numerous letters submitted by Taylor, the court is of the opinion that the § 2255 motion should be denied.

I.      Factual Background

The factual background is taken from the opinion of the United States Court of Appeals for the Fifth Circuit.

---

[1] When referring to a document in the § 2255 civil motion, the court will cite to the relevant docket number, i.e., (#1). When referring to a document in the underlying criminal case, the court will cite to Crim. ECF, followed by the docket number, i.e., Crim. ECF (#136).

At trial, the parties told a tale of two clinics.  The government described a pill mill that prescribed patients more than a million doses of abusable drugs in just two years.  The defense described a pain management clinic that helped people who appeared to suffer from chronic pain.  A jury agreed with the government's account and found the clinic's doctor and office manager guilty of conspiring to distribute controlled substances.  We consider a number of challenges to the convictions and sentences.

Theodore "Tad" Taylor and Chia Jean Lee, a married couple who met while earning their degrees at Yale, ran Taylor Texas Medicine in Richardson, Texas.  Taylor was the clinic's only doctor while Lee, a nurse by training, was the clinic's office manager.  An Eastern District of Texas grand jury indicted the couple for conspiring to distribute controlled substances.  The indictment alleged that from 2010 through early 2012, Taylor and Lee conspired to illegally prescribe five controlled substances: oxycodone, amphetamine salts, hydrocodone, alprazolam, and promethazine with codeine.

A jury convicted both of them after a seven-day trial.  It also made findings about the quantity of drugs the couple distributed, but those quantities did not trigger higher statutory minimum or maximum sentences.  *See* 21 U.S.C. § 841(b)(1)( C).  The district court then sentenced Taylor to the 20-year statutory maximum (his Guidelines range would have been higher but for the statutory cap) and Lee to just over 15 years (the bottom of her Guidelines range).

*United States v. Lee*, 966 F.3d 310, 316 (5th Cir.), *cert. denied*, 141 S. Ct. 639 (2020).

II.    Procedural Background

On January 18, 2017, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Taylor, along with his wife, Chia Jean Lee ("Lee"), with Conspiracy to Distribute, Dispense, and Possess with Intent to Distribute and Dispense Controlled Substances, in violation of 18 U.S.C. § 846.  Crim. ECF (#1).  On October 10, 2018, a jury found Taylor guilty of the charged offense with respect to the five controlled substances.  *Id*. (#123).  On May 3, 2019, the court sentenced Taylor to 240 months' imprisonment, followed by a 3-year term of supervised release.  *Id*. (#154).  His conviction and sentence were affirmed on appeal by the Fifth Circuit on July 14, 2020.  *Id*. (#226).  The Fifth Circuit found that:  (1) the

2

evidence was sufficient to support the defendants' guilt; (2) venue was proper in the Eastern District of Texas; (3) the jury did not commit misconduct; (4) any error by the court in admitting the testimony of Government expert witnesses was harmless; (5) the court did not commit an abuse of discretion in its jury instructions; (6) the court did not err in establishing drug quantities for which the defendants were responsible; and (7) the court did not err in calculating the defendants' advisory guidelines sentence range.  *Lee*, 966 F.3d at 310; Crim. ECF (#227).  Taylor did not file a petition for a writ of certiorari.

On January 31, 2021,[2] Taylor filed the pending § 2255 motion, alleging that he is entitled to relief because his attorney was  ineffective in numerous instances (#1).  The Government filed its Response (#11), asserting that Taylor fails to show a constitutional violation, to which Taylor filed Replies (#s 12, 13).  In his second Reply (#13) and in numerous letters to the court (#s 16-18, 20-22, 26-27), Taylor asked that the *Ruan* case be applied to his case.  In response to an order by the court, the Government filed its "Response to Taylor's Claim for Relief Under *Ruan v. United States*, 142 S. Ct. 2370 (2022)" (#29).

III.    Standard for Federal Habeas Corpus Proceedings

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal."  *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).  A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction.  The range of claims that may be raised in a § 2255 proceeding is narrow.  "[A] distinction" must be "drawn between constitutional or jurisdictional errors on the one hand, and

---

[2] Taylor's § 2255 motion is deemed filed on the date he placed it in the prison mailing system pursuant to the "mailbox rule."  *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir.) (citations omitted), *cert. denied*, 506 U.S. 1007 (1992).  A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992).  Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

IV.   Ineffective Assistance of Counsel

Taylor was represented by Joe Kendall ("Counsel")[3] at trial and asserts that he is entitled to relief based on numerous instances of Counsel's ineffectiveness.  Specifically, Taylor broadly claims that Counsel failed to:  (1) prepare for or adequately conduct trial; (2) advise Taylor properly concerning the effects of rejecting a plea offer and going to trial; (3) cross-examine or impeach Government witnesses; (4) challenge the sentencing enhancements; (5) challenge the Government's theory of the case; and (6) file a motion to suppress evidence from the search of his safe deposit box.  At the Government's request, Counsel prepared an affidavit in response to Taylor's § 2255 motion claims.  *See* (#11-2).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

---

[3] The record shows that Taylor originally retained Don Mulder ("Mulder") to represent him. When Mulder became ill, Joe Kendall took over Taylor's legal representation.  While other attorneys assisted in Taylor's defense, for the sake of simplicity, references to "Counsel" refer to Taylor's entire defense team.

4

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Id.* at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence.  *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).  The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690.  The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance.  *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A movant must "affirmatively prove," not just allege, prejudice.  *Id.* at 693.  If he fails to prove the prejudice component, a court need not address the question of counsel's performance.  *Id.* at 697.

A.     Defense Strategy and Trial Performance

Taylor alleges numerous instances in which Counsel purportedly failed to develop a defense strategy and perform adequately before and during trial.  Specifically, Taylor claims that Counsel failed to:  (1) develop and follow a legal strategy in preparation for trial; (2) call defense witnesses; (3) investigate or review discovery; (4) submit helpful documentary evidence; (5) show that Government agents had committed misconduct; (6) challenge the Government's assertion that

his medical practice was a pill mill; (7) challenge the court's abuse of discretion in sentencing enhancements, and (8) address Counsel's conflict of interest.

        1.    <u>Trial Strategy</u>

Taylor first alleges that Counsel failed "to develop and follow a legal defensive strategy or any defensive plan at all in preparation for jury trial." (#1 at 4). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

Contrary to Taylor's allegations, the record shows that Counsel developed a defense strategy and used it throughout the trial. In Counsel's opening statement, he set up his strategy by asserting that Taylor operated his medical clinic in good faith and for legitimate medical purposes. Besides noting that criminal intent must be established, he emphasized that to be found guilty, the jury must find that Taylor conspired to commit the crimes because he was charged in a conspiracy. Crim. ECF (#194 at 186-88). Counsel's strategy to show that Taylor acted in good faith to help people and that he lacked the intent to form a conspiratorial agreement with anyone was initiated during jury selection, continued throughout the trial, and ended in closing argument. Counsel explained the strategy at trial:

> We do intend to – intend to argue that [Taylor] thought at all times what he was
> doing was correct and right, and that he did not have – as I started off in jury

> selection saying, he did not have the criminal intent because he thought the care he
> was giving at all times was the practice of good medicine.

Crim. ECF (#198 at 110).  Furthermore, on direct examination, Counsel elicited testimony from

Taylor that he did not "enter into any agreement whatsoever with anyone to commit a crime."

Crim. ECF (#199 at 182).  Further, Counsel asked Taylor, "Did you willfully agree, directly or

indirectly, to write a prescription that you in your heart believed was without a legitimate medical

purpose?"  *Id*.  Taylor replied, "No, sir."  *Id*. at 183.  Additionally, in summation, Counsel

continued the defense strategy:

> Dr. Taylor told you that he felt sorry and wanted to help people.  He told you he
> had no wink, no nod, no agreement, no discussion.  He had no agreement with
> Chia Jean Lee and he had no agreement with anyone else.

Crim. ECF (#200 at 79).  "Dr. Taylor told you he believed his patients when they told him what

their symptoms were and that they were in pain.  That doesn't make him a conspirator."  *Id*. at

80.  Counsel continued by saying that Dr. Taylor was "described as naive, and gullible, and

trusting, and who sat on the stand and told you that he felt sorry for his patients and wanted to

help [them]."  *Id*. at 82.

After hearing the testimony presented at trial, the jury agreed with the Government's

position and found Taylor and his wife guilty of the offense charged.  *Lee*, 966 F.3d at 316.

Taylor's disagreement with the verdict does not change the fact that Counsel had a defense strategy

and utilized it throughout the trial.  The weight and credibility of evidence is within the sole

province of the jury.  *United States v. Martinez*, 975 F.2d 159, 160-61 (5th Cir. 1992), *cert.*

*denied*, 507 U.S. 943 (1993).

### 2.   Uncalled Witnesses

Taylor states that he demanded Counsel call "a minimum of 15 witnesses to present on behalf of the defense, including character and credibility witnesses, as well as expert testimony from renowned world authorities on pain management." (#1 at 4). To obtain relief, Taylor must show that, had Counsel investigated, he would have located witnesses to support the defense, such witnesses were available, their testimony would have been favorable if called, and they would have been willing to testify on Taylor's behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). A petitioner must overcome a strong presumption that his counsel's decision not to call a particular witness was a strategic one. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984).

Here, while Taylor provides the names of eighteen witnesses he claims should have been called as defense witnesses (#7 at 13), he fails to provide the substance of their anticipated testimony or demonstrate how it would have affected the outcome of his case. Indeed, he makes no showing that they would have provided testimony favorable to the defense. Taylor does not provide an affidavit from each witness stating not only their willingness to testify on his behalf, but also the substance of such testimony had they been called to testify for the defense. Therefore,

he fails to satisfy his burden. *Alexander*, 775 F.2d at 602.  "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross*, 694 F.2d at 1012.

Moreover, in Counsel's affidavit, Counsel addressed problems that he encountered with the witnesses whom Taylor wished to call:

> Dr. Taylor wanted counsel to call a number of his former patients to basically testify that "he was a good doctor" and that they "had pain."  It was explained to Dr. Taylor that such testimony would not be relevant and would not in any event be effective in counteracting the undercover video recordings of several agents posing as drug seeking patients that the jury saw with their own eyes and heard with their own ears. . . . [T]he witnesses . . . that Dr. Taylor wanted counsel to call fell into one of three categories:
>
> > A.    Witnesses who wanted to invoke their own rights under [HIPAA] and not disclose their treatment for pain by Dr. Taylor, and the opioids he prescribed to them.
> >
> > B.    Patients who were convicted felons.
> >
> > C.    Obvious drug addicts/drug users.

(#11-2 at 3-4).  Concerning expert witnesses, Counsel stated that he could not find any experts willing to testify that Taylor's medical practice and prescribing history were appropriate, which included the "renowned world authority on pain management" whom Taylor wanted to call. *Id*. at 4.

It is well settled that trial strategy is virtually unchallengeable. *See Strickland*, 466 U.S. at 690-91.  Counsel's well-reasoned, strategic choice not to call Taylor's proposed witnesses cannot be considered ineffective assistance of counsel.  Taylor fails to overcome the strong presumption that Counsel's decision not to call the witnesses was a strategic one. *Murray*, 736 F.2d at 282; *Green*, 116 F.3d at 1122.

Additionally, Counsel noted in his affidavit that he called Leondra Johns ("Johns"), a longtime employee of Taylor, to testify for the defense.  (#11-2 at 5).  In contrast to the Government's witnesses, Johns testified generally in favor of Taylor, pointing out that Taylor would discharge patients when he learned they were doctor-shopping or when a pharmacy called indicating a patient might be abusing medication.  Crim. ECF (#199 at 114-15).  Therefore, in addition to Taylor's own testimony, Counsel presented another witness who testified in defense of Taylor.  The jury apparently placed more weight, however, on the evidence presented by the Government, i.e., the video evidence of Taylor with undercover officers posing as drug seekers as well as the testimony of other Government witnesses.  The weight and credibility of evidence is within the sole province of the jury.  *Martinez*, 975 F.2d at 160-61.

### 3. Failure to Investigate

Taylor claims that Counsel failed to investigate the case in some unspecified way, "ignored the Defendant's right to review and inspect all aspects of Discovery," and "shelter[ed] Defendant from access to conditions set forth by the Office of Probation as relevant conduct enhancements." (#1-1 at 18).

It is well settled that defense counsel must engage in a reasonable amount of pretrial investigation and "at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985).  While an attorney must engage in a reasonable amount of pretrial investigation, "the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant, and the defendant's own strategic decisions about his representation." *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994).  A defendant who alleges a failure to

10

investigate must state with specificity what the investigation would have revealed and how it would have altered the outcome. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982), *cert. denied*, 461 U.S. 910 (1983).

Taylor fails to allege specifically what Counsel failed to investigate, how he prevented Taylor from reviewing the discovery, or how he sheltered Taylor from information about relevant conduct enhancements. Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross*, 694 F.2d at 1012. To the extent that Taylor is claiming that he was not allowed access to the Presentence Investigation Report ("PSR"), the record directly contradicts this contention. At sentencing, Counsel noted that he had discussed the PSR during an "extensive meeting" with Taylor at the Fannin County Detention Center. Crim. ECF (#172 at 3). Taylor stated that he fully understood the PSR and advised the court of the parts with which he disagreed. *Id*. Taylor fails to identify any discovery material that Counsel allegedly prevented him from viewing, nor does he demonstrate any prejudice suffered as a result. In sum, Taylor fails to show what further investigation would have revealed and how it would have altered the outcome of the proceeding. *Gray*, 677 F.2d at 1093. He fails to meet his burden.

### 4.   Documentary Evidence

Taylor claims that Counsel "failed to bring forward compliance documentation, discharge records, diagnostic records, and a myriad of other records and reports" to challenge the Government's characterization of his medical practice as a pill mill. (#1-1 at 6). Again, Taylor fails to explain what these unspecified documents contain, whether they were available, where they could be found, and how specifically they would have changed the outcome of his trial. *United*

*States v. Demik*, 489 F.3d 644, 647 (5th Cir.), *cert. denied*, 552 U.S. 982 (2007); *Ross*, 694 F.2d at 1011-12.  It is Taylor's burden to allege with specificity what actions Counsel should have taken with respect to each allegedly omitted piece of evidence and how its presentation would have changed the outcome of his case.  Taylor does not do so.  Moreover, the record shows that Counsel submitted numerous trial exhibits including many "crossover" exhibits that the Government had introduced by agreement of the parties.  (#11-2 at 4).  Taylor fails to show how the outcome of his case would have changed had Counsel submitted the unspecified documents. *Demik*, 489 F.3d at 647.  He fails to fulfill his burden.  This issue is without merit.

### 5.    Government Agents' Alleged Misconduct

Taylor next claims Counsel was ineffective for failing to show that Government agents committed misconduct during the investigation.  (#1-1 at 9; #12-1 at 4).  Taylor alleges that agents and investigators were acting like "Nazi war criminals," torturing Taylor and his wife in various ways, and conducting a money shakedown during the execution of search warrants at his clinic and home.  (#1-1 at 9, 41-42; #1-8 at 27-29).  He asserts Counsel was ineffective for failing to present evidence of this alleged misconduct at trial.

First, Taylor offers nothing to show that these conclusory claims are accurate, and conclusory claims are insufficient to entitle a movant to habeas relief. *Ross*, 694 F.2d at 1011-12. They are unsupported by any credible record evidence and, thus, may be summarily rejected. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (attorney is not ineffective for failing to pursue a frivolous issue).   While Taylor makes these unfounded accusations against the Government agents, he does not assert that Counsel should have filed a motion raising the alleged misconduct.  He simply claims that Counsel should have introduced the evidence "to further

discredit and impeach DEA witnesses and testimony." (#1-1 at 9). At trial, Taylor complained on cross-examination that the agents at the clinic were unfriendly and unprofessional. He said that they repeatedly displayed their guns, made him stay there for two hours, caused him to feel like he was in the middle of a robbery or a carjacking, made him feel "deathly afraid," and continually made him "fearful for [his] life." Crim. ECF (#199 at 235-37). Although Taylor testified as to his observations and feelings concerning the agents, the jury still found him guilty. Taylor fails to show how more testimony of that nature would have changed the outcome of the trial, i.e., that, had Counsel elicited additional testimony about alleged misconduct by the Government agents, he would have been acquitted. Taylor fails to meet his burden. *Green*, 116 F.3d at 1122. This issue is without merit.

### 6.    Rebuttal of Government's Trial Arguments

Taylor asserts that Counsel failed to rebut the Government's assertions that Taylor lost his right to practice medicine, that he and Lee were financially destitute, and that their clinic was a pill mill. (#1-1 at 10).

Taylor first argues that he did not lose his license, but that he voluntarily surrendered it. *Id*. The record shows the Government stated, during its opening statement, that Taylor "voluntarily on the spot surrendered his DEA registration." Crim. ECF (#194 at 183). At closing, both the Government and Taylor's Counsel repeated the same statement. *Id*. (#200 at 55, 90). Furthermore, Taylor testified concerning the circumstances under which he voluntarily surrendered his medical license and DEA registration. *Id*. (#199 at 218, 237). In essence, there was nothing to rebut, as the record clearly reflected that Taylor voluntarily surrendered his license. Taylor fails to show that Counsel performed deficiently. *Strickland*, 466 U.S. at 687.

Next, Taylor argues that Counsel failed to rebut the Government's argument that Taylor had a financial motive to operate a pill mill.  Again, the record contradicts this assertion.  On direct examination, Counsel elicited testimony from Taylor that he is not "a person driven by money" but, instead, was motivated by his desire to help patients—especially, low-income patients.  Crim. ECF (#199 at 247-48).  Taylor also testified that he made approximately $150,000.00 per year at a prior job before opening his clinic; his mother gifted him $550,000.00 in 2008; he owned a lake house in addition to his home in Plano; he owned a Corvette and other cars; and he was in the process of finalizing plans for the construction of a second clinic that was estimated to cost approximately $1,000,000.00.  *Id*. at 167-68, 174-75, 194.  Taylor testified that the Government's stance on his alleged financial difficulty was based on his attempt to refinance a mortgage to receive a better interest rate.  *Id*. at 175-76.  Not only was this evidence before the jury, but the jury also saw a video of Lee's ostensibly removing gold and cash from the couple's safe deposit box.  (#11-1 at 6).  Accordingly, Taylor is simply wrong.  Counsel showed that Taylor was not lacking in assets; therefore, being financially distressed could not have been the motivation for his prescribing practices.  Taylor fails to show that Counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.

Finally, the record reflects that Counsel attempted to rebut the Government's position that Taylor operated a pill mill.  Counsel's strategy was to show that Taylor acted in good faith as a conscientious physician in an effort to help his patients.  As noted in the Fifth Circuit's opinion, "The defense described a pain management clinic that helped people who appeared to suffer from chronic pain."  *Lee*, 966 F.3d at 316.  The court further observed:

> Even by the standards of our adversarial system, the difference in the parties' portrayals of the clinic is stark.  The defendants' story is that they ran Taylor Texas

Medicine as a legitimate pain management operation.  Taylor says that he carefully examined patients, refused to prescribe to patients who tested positive for illegal drugs, and attempted conservative treatments before resorting to others prone to abuse.  He acknowledges that, in retrospect, he may have made some mistakes.  But he contends he acted in good faith and trusted his patients to accurately report their pain.

*Id*. at 317.  Therefore, Counsel cannot be ineffective in this regard; he made the arguments Taylor now espouses.  Nevertheless, as the Fifth Circuit remarked, the Government presented "overwhelming evidence that the defendants ran a pill mill."  *Id*. at 323.  "In fact, it is hard to find another Fifth Circuit pill mill case with such overwhelming evidence of guilt."  *Id*. at 326.  In sum, Taylor fails to show that, had Counsel done more to rebut the Government's stance, the jury would have not accepted the pill mill version of the facts and acquitted him.  Taylor fails to satisfy his burden.

### 7.    Trial Penalty

Taylor asserts that Counsel failed to challenge the court's imposition of the 240-month sentence, which amounted to a "trial penalty."  (#1 at 5; #1-1 at 11).  Taylor surmises that, because the Government extended better plea offers prior to trial, the 240-month prison term improperly penalized him for exercising his constitutional right to go to trial.  *See id*.  Taylor is simply wrong.  At sentencing, Counsel presented that very same argument—that Taylor should not be punished for exercising his constitutional right to a jury trial.  Crim. ECF (#172 at 22-23).  Indeed, Taylor also made the same contention:  "I'll just say I don't think it's right that I should be offered one year and then because of the fact that I stood up and I don't think I did anything wrong, it's going to be 20 years in prison."  *Id*. at 37.  Counsel urged the court to vary downward from the applicable guidelines range to account for this and to view the Government's most recent plea offer of five years as "instructive" of what a reasonable sentence would be.  *Id*. at 22-23.

In response, the court noted that many cases involve defendants who receive lower plea offers at earlier phases of a prosecution, elect to go to trial, and then receive a harsher sentence upon conviction. *Id*. at 44. The court concluded, "[T]hat provides no reason for a variance." *Id*. The court rejected the defense's arguments. As the Fifth Circuit noted on appeal, Taylor's guidelines range would have been even higher but for the 20-year statutory cap. Taylor is simply wrong in his assertion—the record clearly reflects that Counsel made the "trial penalty" argument. This issue is without merit.

8. Conflict of Interest

Next, Taylor argues that Counsel "acted upon a conflict of interest when he accepted responsibility to liquidate the Plaintiff's personal home should the Plaintiff be found guilty and imprisoned." (#1-1 at 11). Assuming Taylor is referring to himself when referencing "the Plaintiff," the claim is ambiguous and speculative. To the extent that Taylor is arguing that Counsel suffered from a conflict of interest[4] when he agreed to sell Taylor's house to satisfy the court-ordered forfeiture of $450,00.00 in this case, that is outside the scope of a § 2255 motion, which is used to challenge the constitutionality of a conviction and sentence. Ineffective assistance of counsel claims based on forfeiture are not cognizable in a § 2255 proceeding because they do not relate to unlawful custody. *See Price v. United States*, No. 4:18-cv-757-ALM-KPJ, No. 4:16-cr-67, 2022 WL 815027, at *8 (E.D. Tex. Feb. 28, 2022) (collecting cases), *adopted by* No.

---

[4] A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties. *United States v. Medina*, 161 F.3d 867, 870 n.1 (5th Cir. 1998), *cert. denied*, 526 U.S. 1043 (1999). An "actual conflict" exists when defense counsel is compelled to compromise his "duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a present or former client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). It is well settled that a conflict of interest must be actual, rather than potential or speculative, for it to violate Sixth Amendment standards. *See, e.g.*, *Barrientos v. United States*, 668 F.2d 838, 841 (5th Cir. 1982).

4:18-cv-00757-ALM-KPJ, No. 4:16-cr-67, 2022 WL 813611 (E.D. Tex. Mar. 16, 2022).  The

claim is both conclusory and frivolous.  *Ross*, 694 F.2d at 1011-12.

      B.    <u>Sentencing Exposure</u>

      Taylor argues that Counsel failed to advise him properly of a possible trial penalty should

he be found guilty at trial.  In Counsel's affidavit, he asserts that this allegation is "patently false."

(#11-2 at 5).  Counsel states that he "never told the defendant there would be no risk in going to

trial.  In fact, [Counsel] told him just the opposite based on [his] evaluation of the evidence and

the forum [they] were in." *Id*.  Despite Counsel's warnings, Taylor "at all times proclaimed that

he was innocent and demanded a trial." *Id*.  Attached to Counsel's affidavit is an email to Counsel

dated October 18, 2017, in which Taylor emphatically declared that he would never plead guilty.

*See id*. at 33-34.  "I will NEVER plead guilty to the DEA's fake charges [that] I ran a clinic to

sell drugs, because that is a lie." *Id*. at 33.  "I WILL NEVER PLEAD GUILTY !!!!!!!!!!" *Id*.

"In conclusion, I WILL NEVER EVER PLEAD GUILTY since I did nothing wrong." *Id*. at 34.

The Government also received an email from Taylor on September 15, 2014.  There, Taylor

wrote:  "You can have the 20K if you drop pre-charges and walk away.  Otherwise[,] I will fight

you until the end of the earth.  I never did anything wrong . . . ." (#11-3 at 1).

      In open court, Taylor acknowledged that he understood the potential penalties he faced by

going to trial.  At his initial appearance on February 22, 2017, he was told that, if convicted, the

"maximum potential punishment" was "not more than 20 years" imprisonment.  Crim. ECF (#189

at 3).  At that time, he affirmed that he understood the range of punishment and acknowledged that

he had received a copy of the Indictment, which also included a notice of penalty listing the

maximum sentence he could receive. *Id*.  On March 20, 2017, Taylor was advised again in open

court during his arraignment hearing that the punishment range was not more than twenty years' imprisonment and he confirmed his understanding of this.  Crim. ECF (#190 at 3).  Yet again, on the first day of trial on October 1, 2018, Taylor agreed that he had received and rejected various plea offers, and affirmed that he understood the sentencing exposure he faced by going to trial. Crim. ECF (#194 at 152).  In fact, the colloquy proceeded as follows:

> [COUNSEL]: Okay, I do know that from my personal knowledge when I have been representing you, the government offered you a plea agreement within the last year I believe, of 60 months incarceration, correct?
>
> TAYLOR: That is correct.
>
> [COUNSEL]: And we discussed that?
>
> TAYLOR: Yes, we did.
>
> [COUNSEL]: Including the range of punishment you were exposed to, and what Judge Crone could do in terms of a sentence if you were convicted?
>
> TAYLOR: Yes, sir, that's correct.
>
> [COUNSEL]: And you told me what in that regard to that?
>
> TAYLOR: I said I don't want it.  I don't think I did anything wrong.  I told you that.

*Id*.  "[S]olemn declarations in open court carry a strong presumption of verity." *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

The record shows that Taylor was fully advised of the penalties he faced by going to trial and that he fully understood the potential sentence he could receive if convicted at trial.  With regard to a defendant's decision not to plead guilty and instead to proceed to trial, in order to show ineffective assistance of counsel, he must demonstrate that:  (1) but for the ineffective advice of

counsel, there is a reasonable probability that he would have accepted the plea offer; (2) the prosecution would not have withdrawn the offer in the light of intervening circumstances; (3) the court would have accepted its terms; and (4) the conviction or sentence or both under the terms of the offer would have been less severe than under the judgment and sentence that were, in fact, imposed. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012); *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). For purposes of showing prejudice, any amount of additional jail time is considered significant. *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

Here, Taylor was emphatic that he would never plead guilty; accordingly, he fails to meet the first requirement. He does not show that, but for the ineffective advice of counsel, there is a reasonable probability that he would have accepted the plea offer. In fact, he refused at least three plea offers prior to trial. Taylor repeatedly stated that he did not do anything wrong, a position he continues to maintain. He emphasized that he would never plead guilty. As Taylor fails to meet the first factor, there is no need to examine the other *Lafler* factors. A defendant must show all four requisites are met. *Lafler*, 566 U.S. at 164. Accordingly, Taylor has not shown there is a reasonable probability that, but for Counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. This issue is without merit.

C.     Cross-Examination and Impeachment of Witnesses

Taylor claims that Counsel failed to cross-examine and impeach the Government witnesses properly. (#1 at 7). The record contradicts this assertion, however. Transcripts from the trial show that all of the Government witnesses were cross-examined. Crim. ECF (#s 194-200).

19

Counsel further attests to this in his affidavit by saying, "Each of the seventeen government witnesses were vigorously cross examined . . . ."  (#11-2 at 3).

In particular, Taylor complains of this question Counsel asked Lt. Nick Bristow, one of the officers who posed as a patient at Taylor's clinic:

> And could you tell the jury on the 23rd of September when you had the script in your hand with a felony committed in your presence and within your view, if you really believed what you're telling them about this man, why didn't you slap the cuffs on him right then and shut this thing down if you really believed that there was a felony going on in front of you?

Crim. ECF (#196 at 100).  In Counsel's affidavit, he notes that this question had a "specific and impeaching purpose."  (#11-2 at 5).  Counsel was attempting to show that law enforcement officers typically arrest persons they believe to be dealing drugs and posing a threat to the community; but in this case, no arrest was made.  Thus, Counsel was trying to show that Taylor was not the drug dealer and threat that the Government was alleging.

While Taylor names certain witnesses that he claims Counsel should have been more effective in cross-examining, he does not articulate the specific lines of questioning that should have been pursued, but were not.  He also fails to show how "a different cross-examination would have created a reasonable probability of a different outcome."  *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir.), *cert. denied*, 580 U.S. 833 (2016).  In any event, decisions regarding cross-examination are generally considered matters of trial strategy that "will not support an ineffective assistance claim."  *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014), *cert. denied*, 577 U.S. 1137 (2016).  Furthermore, the jury heard both direct and cross-examinations but still found Taylor guilty.  It was up to the jury to determine if it believed a witness's testimony and the weight to be accorded the testimony.  *United States v. Millsaps*, 157 F.3d 989, 994 (5th

Cir. 1998) ("[I]t is the sole province of the jury . . . to weigh conflicting evidence and evaluate the credibility of witnesses."). Speculation concerning the possible effect of using a different cross-examination technique or impeachment strategy is the type of hindsight about which *Strickland* cautions. *See Strickland*, 466 U.S. at 689. This issue is without basis.

D.    Sentencing Enhancements

Taylor claims that Counsel was ineffective for failing to challenge the court's "arbitrary enforcement of certain sentencing enhancements."[5] (#1-1 at 33). The record shows that the court imposed two sentencing guideline enhancements: (1) that Taylor abused his position of public trust and used his special skills as a physician to commit the crime, and (2) that Taylor possessed a firearm in connection with the offense. While Taylor did not challenge the first enhancement, he did challenge the gun enhancement, both at sentencing and on appeal. This court and the Fifth Circuit both rejected Taylor's challenge. *See Lee*, 966 F.3d at 328-29.

It is well settled that, absent countervailing equitable considerations, a § 2255 movant cannot relitigate issues raised and decided on direct appeal. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *see Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring in part and dissenting in part). "[I]ssues raised and disposed of in a previous appeal from an

---

[5] While Taylor did not raise a specific issue on this matter, he continues to assert at various points throughout his submissions that the undersigned judge is biased in drug cases because her daughter died of a drug overdose. He also complains that proceedings were rushed because the undersigned judge had a hair appointment and because she was generally not interested. *See, e.g.*, (#s 12-1, 21, 22). As already noted in the Memorandum Opinion and Order denying Taylor's motion for recusal (#6), neither the undersigned's daughter nor any other family member or friend has suffered from or died of a drug overdose. Likewise, hair appointments are not scheduled during the work week. *Id*. at 3. "Among several other misstatements and rumors, these contentions are simply untrue." *Id*. The trial started on October 1, 2018, and concluded on October 10, 2018, which was more than adequate time for Taylor's trial, as the jury charge conference and other peripheral matters were handled after regular court hours. These accusations are simply false and were previously addressed in the court's Order denying Taylor's motion for recusal, yet he continues to perpetuate these falsehoods.

original judgment of conviction are [generally] not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir.), *cert. denied*, 446 U.S. 945 (1980)), *cert. denied*, 476 U.S. 1118 (1986).  It is also well settled that a collateral challenge may not take the place of a direct appeal.  *Shaid*, 937 F.2d at 231. Accordingly, if Taylor raised, or could have raised, constitutional or jurisdictional issues on direct appeal, he may not raise them on collateral review unless he shows either cause for his procedural default and actual prejudice resulting from the error, or demonstrates that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent.  *Id*. at 232.

In this case, Taylor could have appealed the court's application of the sentencing enhancement that Taylor abused his position of public trust and special skills as a physician to commit the crime, but he did not.  Even if he had, the Sentencing Guidelines Manual expressly states that the "special skill" provision applies to doctors.  U.S.S.G. § 3B1.3 n.4.  Accordingly, any challenge to this enhancement would have been fruitless.

The record shows that Counsel challenged the two-level enhancement Taylor received for possessing a firearm in connection with the offense.  The enhancement was based on a handgun found in his desk drawer at his medical clinic.  The Fifth Circuit considered this issue and rejected it on direct appeal.  *Lee*, 966 F.3d at 328-29.  Therefore, this issue is procedurally barred.

In sum, because Taylor either raised, or could have raised, the sentencing enhancement issues on direct appeal, they are both procedurally barred from collateral review.  He has not shown cause for his procedural default, actual prejudice, or that he is actually innocent.  *Shaid*, 937 F.2d at 231-32.

Even if these issues were not procedurally barred, Taylor's claim is conclusory.  He fails to specify how Counsel's performance was deficient concerning the sentencing enhancements and what prejudice he suffered as a result.  Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding.  *Ross*, 694 F.2d at 1011-12.

E.    Taylor's Financial Status and Motivation

Taylor complains that Counsel failed to refute adequately the Government's arguments concerning alleged financial hardships, which provided motivation to commit the charged crime. (#1-1 at 10).  He asserts that Counsel should have done more to show that Taylor was not financially destitute and that he and Lee had substantial financial resources.  As discussed above, Counsel presented evidence that Taylor was not financially destitute and had substantial assets. *See supra* section A.6.  Taylor fails to show that Counsel performed deficiently or that the outcome of his case would have been different had Counsel performed more to Taylor's liking on this issue.  *Strickland*, 466 U.S. at 694.

F.    Suppression of the Search of Safe Deposit Box

Taylor claims that Counsel was ineffective for failing to file a motion to suppress evidence obtained from the search of his safe deposit box.  (#1-1 at 38).  Taylor alleges that the evidence should have been suppressed because of a discrepancy between the date on which the search warrant issued and the date the search was conducted.  *Id*.

The court first notes that the safe deposit box was empty when agents executed the search warrant.  Crim. ECF (#70 at 13-14).  Therefore, there was no evidence seized, and there was nothing to suppress.  This issue is frivolous, and Counsel cannot be ineffective for failing to raise

23

frivolous claims. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Nonetheless, the record reflects that Counsel moved to suppress evidence from the safe deposit box as well as the search warrant itself. Crim. ECF (#70). After conducting a hearing on the motion, the court denied it. *Id.* at #101. Therefore, Taylor is simply mistaken—Counsel did file a motion to suppress. Furthermore, the box was empty; thus, there was nothing to suppress. Taylor fails to show deficient performance or that, but for Counsel's alleged errors, the outcome of his case would have been different. *Strickland*, 466 U.S. at 694. This issue is without foundation.

      G.    New Supreme Court case of *Ruan v. United States*, 597 U.S. 450 (2022)

Finally, Taylor raised a new claim for relief under *Ruan v. United States*, 597 U.S. 450 (2022) in his second Reply (#13) and in several letters sent to the court (#s 16-18, 21-22, 26-27)—after the Government's Response was filed. This claim fails for several reasons. First, Taylor failed to file a motion for leave to amend his § 2255 motion; thus, the purported amendment is not proper. Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings, which applies to the amendment of § 2255 motions. *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002). Under Rule 15(c), a court may, in its discretion, permit an amendment that clarifies or amplifies a claim or theory in a timely-filed § 2255 motion after the one-year statute of limitation imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000). Conversely, an amendment under Rule 15(c) should not be allowed where the movant seeks to add an entirely new claim or new theory of relief. *Id.* Taylor's amendment is improper, as the Response was filed prior to the documents attempting to add the new claim. Taylor fails to show that the Government consented to the amendment or that justice requires that the court allow it.

24

Second, the court notes that, had a motion for leave to amend been filed, it would have fallen outside the one-year statute of limitations set by the AEDPA, which applies to § 2255 motions.  In general, a movant for collateral relief has one year from "the date on which the judgment of conviction becomes final" to file a motion challenging a conviction.  28 U.S.C. § 2255(f)(1).  A conviction is final under § 2255 when a defendant's options for further direct review are foreclosed.  *United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000).  Here, the Fifth Circuit ruled on Taylor's appeal on July 14, 2020, and he did not file a petition for a writ of certiorari in the United States Supreme Court.  Thus, Taylor's conviction became final ninety days later, on October 12, 2020, the last day on which he could have filed a petition for a writ of certiorari.  *See* SUP. CT. R. 13(1) (a petition for a writ of certiorari is timely when it is filed with the clerk within ninety days after entry of the judgment); *Clay v. United States*, 537 U.S. 522, 532 (2003).  Therefore, to be timely, the present § 2255 motion, or any new claims to be presented in the motion, must have been filed by October 12, 2021.  Taylor first mentions *Ruan* on July 5, 2022.  *See* (#13).  Consequently, Taylor's attempt to raise a new issue based on the *Ruan* case is time-barred, as this issue must have been raised no later than October 12, 2021.

Finally, the fact that *Ruan* was decided after Taylor submitted his § 2255 motion makes no difference because this issue is procedurally barred.  Taylor could have raised the issue that was decided in *Ruan* on direct appeal.  In *Ruan*, the Supreme Court held that a medical practitioner may be convicted under 21 U.S.C. § 841(a) only if the practitioner "knowingly or intentionally" prescribes a controlled substance for a non-legitimate medical purpose or outside the course of his or professional practice.  *Ruan*, 597 U.S. at 454 (to sustain a conviction under Section 841(a), the Government must prove beyond a reasonable doubt "that the defendant knew

25

that he or she was acting in an unauthorized manner, or intended to do so"). In other words, the Government must show that a physician subjectively knew that the prescription in question was unauthorized; it is not enough to show that the physician was objectively unauthorized to issue it. The appellate court in that case "evaluated the jury instructions under an incorrect understanding of § 841's scienter requirements," and the Supreme Court remanded for further proceedings. *Id.* at 467-68.

Taylor could have raised this issue on appeal, but he failed to do so. He did not argue that the jury instructions misstated the scienter requirement for his charged offense. In fact, Taylor proposed the jury instructions that applied to this issue, which the court largely adopted. *Compare* Crim. ECF (#105 at 14-19) (Taylor's proposed instructions on the offense of conspiracy, and the meaning of "knowingly," "willfully," "legitimate medical purpose," and "usual course of professional practice"), *with* Crim. ECF (#122 at 13-16) (the court's instructions on the same subject); *see also* Crim. ECF (#200 at 7-10) (transcript from objections to the jury charge showing that the defense lodged an objection only to the jury charge's not tracking the indictment and to the inclusion of a deliberate-ignorance instruction).[6]

As noted above, a collateral challenge may not take the place of a direct appeal. *Shaid*, 937 F.2d at 231. Accordingly, because Taylor could have raised this issue on direct appeal, he

---

[6] In any event, it is highly unlikely that Taylor could raise a colorable argument that he neither "knew [n]or intended that his . . . conduct was unauthorized." *Ruan*, 597 U.S. at 467. Indeed, on direct appeal, the Fifth Circuit noted that "there was plenty of evidence indicating each defendant knew Taylor was improperly prescribing drugs to patients," characterizing the case as one "with strong evidence of actual knowledge." *Lee*, 966 F.3d at 325-26. The Fifth Circuit further explained that the "substantial evidence" of the defendants' actual knowledge "[came] from a variety of sources: undercover agents, witnesses who raised concerns about patients' drug abuse, the defendants' practice of ignoring highly suspicious drug tests, the clinic's odd pricing structure, and Taylor's cursory medical examinations." *Id.* at 326.

may not raise it on collateral review unless he shows either cause for his procedural default and actual prejudice resulting from the error, or demonstrates that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent. *Id*. at 232. Taylor wholly fails to do so.

V.      Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Taylor has not yet filed a notice of appeal, the court, nonetheless, addresses whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir.), *cert. denied*, 540 U.S. 956 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's

underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, reasonable jurists could not debate the denial of Taylor's § 2255 motion on substantive or procedural grounds or find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, Taylor is not entitled to a certificate of appealability as to the claims raised.

VI.   Conclusion

In accordance with the foregoing analysis, the court finds that Taylor's *pro se* motion to vacate, set aside, or correct sentence (#1) is without factual or legal basis and must be rejected. In sum, Taylor fails to meet his burden of proof to show he is entitled to relief. He fails to show that Counsel's performance was deficient or that, but for Counsel's alleged ineffectiveness, the outcome of his trial would have been different.

It is accordingly **ORDERED** that the motion to vacate, set aside, or correct sentence is **DENIED** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled upon are **DENIED**.

SIGNED at Beaumont, Texas, this 27th day of March, 2024.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

28